IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OUR CHILDREN'S EARTH FOUNDATION, and SIERRA CLUB, | No. C 05-00094 CW |
| Plaintiffs, | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO INTERVENE AS DEFENDANTS |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants, | |
| and | |
| AMERICAN PETROLEUM INSTITUTE and NATIONAL PETROCHEMICAL & REFINERS ASSOCIATION, | |
| Proposed Intervenors. | |
| _____/ | |

Pursuant to Federal Rule of Civil Procedure 24, Applicants American Petroleum Institute (API) and National Petrochemical & Refiners Association (NPRA) (collectively, Applicants) move to intervene as defendants in this action. The motion is opposed by Plaintiffs Our Children's Earth Foundation (OCEF) and Sierra Club (collectively, Plaintiffs). Defendants United States Environmental Protection Agency and Stephen Johnson, sued by Plaintiffs in his capacity as Acting Administrator[1]

_____

[1]Plaintiffs' complaint names Michael Leavitt, former EPA Administrator, as a Defendant. His successor, Acting Administrator Johnson, is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d)(1). See Answer at 1 n.1.

(collectively, the EPA), have not taken a position in support of or in opposition to the motion.  Having considered all of the papers filed by the parties, the Court grants in part and denies in part Applicants' motion for leave to intervene.

BACKGROUND

I.   Underlying Action

The Clean Air Act (CAA) requires that the Administrator of the EPA promulgate federal standards of performance for sources of air pollutants.  42 U.S.C. § 7411(b)(1)(B).  The CAA further directs that the EPA "shall, at least every 8 years, review and, if appropriate, revise such standards," although it "need not review any such standard if the Administrator determines that such review is not appropriate in light of readily available information on the efficacy of such standard."  Id.

Plaintiffs' claims in this action arise from the EPA's failure to review and revise its standards of performance relating to petroleum refineries, 40 C.F.R. Subparts J, VV and GGG, or to determine that review of the standards relating to those Subparts is not appropriate.  See respectively 40 C.F.R. §§ 60.100 et seq. (standards of performance for petroleum refineries), §§ 60.480 et seq. (standards of performance for equipment leaks of volatile organic compounds (VOC) in the synthetic organic chemicals manufacturing industry) and §§ 60.590 et seq. (standards of performance for equipment leaks of VOC in petroleum refineries) (hereinafter the Subparts).  Plaintiffs allege that, upon conducting the required review, the EPA should inter alia introduce emission limitations for

United States District Court<br>For the Northern District of California

2

nitrogen dioxides (NOx).  Complaint ¶ 29.  In their complaint,
Plaintiffs allege three violations of the CAA based on failure
to comply with 42 U.S.C. § 7411(b)(1)(B).

Plaintiffs request declaratory and injunctive relief,
including (1) a declaration that the EPA violated its duty
either to review and if appropriate revise Subparts J, VV and
GGG, or to determine that review of those Subparts is not
appropriate in light of readily available information about
their efficacy; and (2) an order requiring the EPA to fulfill
these duties by issuing proposed revisions of these rules within
six months and final rules within six months.  See Complaint ¶¶
A-B.

On March 15, 2005, the EPA filed an answer.  The EPA admits
that it has failed, within eight years of issuance, either to
review and if appropriate revise the relevant Subparts or to
determine that such review is not appropriate.  The EPA denies
that Plaintiffs are suffering and will suffer irreparable harm,
and denies that Plaintiffs are entitled to the relief requested.

II.  Applicants for Intervention

By motion filed with the Court on March 25, 2005, API and
NPRA seek to intervene as defendants in this action.  Applicants
seek to intervene as of right, under Federal Rule of Civil
Procedure 24(a)(2), or, in the alternative, permissively, under
Federal Rule of Civil Procedure 24(b)(2).

API is the primary trade association of the oil and natural
gas industry.  NPRA is the primary trade association of United

3

States petroleum refiners and the petrochemical industry.
Members of API and NPRA are regulated under the CAA regulations
at issue in this case.  API and NPRA members would be
financially impacted if revisions proposed by Plaintiffs, such
as emission limitations on NOx, were adopted by the EPA.  API,
NPRA and their members have participated in regulatory and
judicial processes relating to air quality.

LEGAL STANDARD

To intervene as a matter of right under Federal Rule of
Civil Procedure 24(a)(2), an applicant must claim an interest
the protection of which may, as a practical matter, be impaired
or impeded if the lawsuit proceeds without the applicant.
Forest Conservation Council v. United States Forest Serv., 66
F.3d 1489, 1493 (9th Cir. 1995).  The Ninth Circuit applies a
four-part test to motions under Rule 24(a):

> (1) the motion must be timely; (2) the applicant must
> claim a "significantly protectable" interest relating to
> the property or transaction which is the subject of the
> action; (3) the applicant must be so situated that the
> disposition of the action may as a practical matter impair
> or impede its ability to protect that interest; and (4)
> the applicant's interest must be inadequately protected by
> the parties to the action.

Id. (quoting Sierra Club v. EPA, 995 F.2d 1478, 1481 (9th Cir.
1993) (citation omitted)).

The Ninth Circuit interprets Rule 24(a) broadly in favor of
intervention.  Id.  In evaluating a motion to intervene under
Rule 24(a), a district court is required "to take all well-
pleaded, nonconclusory allegations in the motion . . . as true
absent sham, frivolity or other objections."  Southwest Ctr. for

4

1  Biological Diversity v. Berg, 268 F.3d 810, 820 (9th Cir. 2001).

2

3       A court may also at its discretion permit intervention

4  "when an applicant's claim or defense and the main action have a

5  question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).

6  In exercising its discretion, a court is to "consider whether

7  the intervention will unduly delay or prejudice the adjudication

8  of the rights of the original parties."  Id.

9                           DISCUSSION

10  I.  Intervention as of Right Under Rule 24(a)(2)

11       A.  Timeliness

12       The most important consideration in evaluating the

13  timeliness of a motion to intervene is whether any delay in

14  moving for intervention may prejudice existing parties; as long

15  as prejudice is not likely to result from the timing of the

16  motion, courts interpret the timeliness requirement liberally.

17  See, e.g., Cummings v. United States, 704 F.2d 437, 439 (9th

18  Cir. 1983) (motion to intervene timely even though made after

19  interrogatories and two weeks before date set for close of

20  discovery).

21       In the present case, although EPA has filed an answer to

22  the complaint, no dispositive motions have been filed.

23  Plaintiffs do not contest the timeliness of Applicants' motion.

24  Therefore, the Court concludes that Applicants' motion to

25  intervene is timely.

26       B.  Protectable Interests and Impairment of Ability to
        Protect Interests

27

28                               5

United States District Court
For the Northern District of California

As noted above, under Rule 24(a)(2), an applicant may intervene as of right when the applicant "claims an interest relating to the property or transaction which is the subject of the action." The interest asserted need not be a "specific legal or equitable interest," but it must be "significantly protectable." <u>Portland Audubon Soc'y v. Hodel</u>, 866 F.2d 302, 309 (9th Cir. 1989), <u>cert. denied</u>, 492 U.S. 911 (1989) (citations omitted). Applicants must also be situated such that "disposition of the action may as a practical matter impair or impede the applicant's ability to protect" its asserted interests. <u>Forest Conservation Council</u>, 66 F.3d at 1493.

Interests the Ninth Circuit has held sufficient to support intervention as of right include a city's interest in preventing modification of water permits held under the Clean Water Act, <u>Sierra Club</u>, 995 F.2d at 1482; a State's interest in preventing action on federal lands that could impair the State's legal duty to manage its own adjacent lands, <u>Forest Conservation Council</u>, 66 F.3d at 1497; a power company's interest in preventing federal action that could hinder construction of a power plant and the company's duty to ensure a water supply, <u>Churchill County v. Babbitt</u>, 150 F.3d 1072, 1084 (9th Cir. 1998), <u>as amended by</u> 158 F.3d 491 (9th Cir. 1998); and a city's interests in taxing and regulating contested land, <u>Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States</u>, 921 F.2d 924, 927-28 (9th Cir. 1990). In contrast, the Ninth Circuit held that timber companies' economic interest in ensuring an ongoing supply of timber was not a "protectable" interest

6

sufficient for intervention as of right when those companies did not assert existing contracts for the timber in question. Portland Audubon, 866 F.2d at 309; see also Sierra Club, 995 F.2d at 1482.

Applicants assert several interests relating to Plaintiffs' complaint. First, Applicants contend that they have an interest as past and future participants in the rule-making process. They claim that Plaintiffs seek to "short-circuit" the process established by CAA Section 307(d)(1)(C), 42 U.S.C. § 7607(d)(1)(C), which sets forth rules for inter alia publication, public comment and judicial review of EPA rule-making. Applicants also assert a more general economic interest in preventing the changes sought by Plaintiffs in the EPA's regulation of petroleum refineries. Applicants note that if EPA removed certain startup, shutdown and malfunction exemptions to emissions requirements, or imposed new limits on NOx emission rates, API and NPRA members would face increased operating costs and potential legal liability. Slaughter Decl. ¶¶ 6-7; Ng Decl. ¶¶ 5-6. Finally, Applicants assert an interest in preventing Plaintiffs' requested injunctive relief, which would require that the EPA fulfill its review obligations by issuing proposed revisions of the Subparts within six months and final versions within six months.

As a prima facie matter, Applicants' affidavits show that they have significant economic interests in the current system of regulations governing petroleum refineries, and a significant procedural interest in participation in any changes to that

United States District Court
For the Northern District of California

system.   In order to determine whether these interests meet the second element of the Ninth Circuit's test, however, Applicants must show that these interests are "protectable," <u>Sierra Club</u>, 995 F.2d at 1481-82 (citing <u>Donaldson v. United States</u>, 400 U.S. 517 (1970)).   Applicants must also meet the third, related requirement to show that disposition of this case could result in impairment of Applicants' ability to protect these interests.

Applicants demonstrate that their interest as participants in the procedures established by 42 U.S.C. § 7607 is protected and may be threatened by Plaintiffs' requested injunctive relief, at least insofar as injunctive relief would abridge the normal § 7607 process.   If, for instance, the Court were to issue an injunction that restricted or shortened opportunities for Applicants and their members to comment on proposed rules, their rights may be impeded.

However, Applicants have not shown that their ability to protect their other interests could be impaired by disposition of this action.   In attempting to characterize the potential imposition on their interests broadly, Applicants confuse Plaintiffs' factual allegations with the complaint's actual claims and requests for relief.   The "factual background" section of Plaintiffs' complaint alleges that technology exists to reduce the emission rates for NOx from fluidized catalyst cracking units (FCCU) and that current standards of performance should be revised accordingly, and that current startup, shutdown and malfunction exemptions lack technological justification and should be removed.   <u>See</u> Complaint ¶¶ 27-29.

United States District Court

For the Northern District of California

Applicants have demonstrated protected economic and procedural interests in such regulatory changes.  However, this interest is not endangered by Applicants' claims and request for declaratory relief per se, because they are narrowly based on the EPA's obligation to review and revise its standards of performance relating to petroleum refineries, or to determine that such review is not appropriate.  Applicants' interests will be at stake only once the EPA begins its review or determines not to review.  Even if the Court were to order the EPA to engage in that process, changes to the existing system of regulations would not automatically occur.

Applicants rely heavily on Sierra Club, in which the Ninth Circuit held that a city had a right to intervene in a case where the Sierra Club sued the EPA pursuant to the Clean Water Act.  In arguing that the Sierra Club there "challenged EPA for allegedly failing to list impaired waterways," Reply at 4, Applicants omit important facts regarding the posture of Sierra Club.  There, the plaintiff sought not only an order compelling the EPA to list impaired waters, but also to list and implement

> control strategies . . . by promulgating final National Pollution Discharge Elimination System permits containing pollutant-specific, numerical, water quality-based effluent limitations that reduce toxins being discharged from each of the Arizona point sources.

995 F.2d at 1480.  In practical terms, the court was asked to order the EPA to change the terms of the city's permits for its wastewater treatment plants.  995 F.2d at 1481.  Unlike the city-intervenor in Sierra Club, Applicants have no economic interests that would be immediately and directly affected by the

9

more narrow injunctive relief sought here.  The fact that this case, like <u>Sierra Club</u>, does not involve NEPA is not dispositive.  Applicants have not shown, as a threshold matter, that resolution of the merits of the action might impair their protected interests, other than their right to participate in the review process in the event injunctive relief is granted.

C.  Adequacy of Representation

The burden of showing that an applicant's interests may not be adequately represented by the existing parties to an action is minimal.  <u>Trbovich v. United Mine Workers of America</u>, 404 U.S. 528, 538 n.10 (1972); <u>Scotts Valley</u>, 921 F.2d at 926-27.  Here, it is not clear that the interests of Applicants and the interest of the EPA are perfectly aligned.  While the government must represent the broad public interest, Applicants are concerned with their own financial welfare.  The Court therefore finds that Applicants have met this requirement.

D.  Conclusion

Because Applicants have not shown that they have protected interests that may be impaired by resolution of Plaintiffs' claims, the Court concludes that Applicants may not intervene as of right on the merits phase of this action, i.e. adjudication of Plaintiffs' three claims of violation of the CAA and request for declaratory relief.  However, Applicants may intervene in this case as to the question of what injunctive relief, if any, should be ordered with respect to Plaintiffs' claims.

II.  Permissive Intervention Under Rule 24(b)(2)

Under Federal Rule of Civil Procedure 24(b)(2), the Court

**United States District Court**
For the Northern District of California

10

**United States District Court**
For the Northern District of California

may permit intervention if the applicant presents a claim or defense that has a question of law or fact in common with the main action.  An applicant seeking "permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."  <u>Donnelly v. Glickman</u>, 159 F.3d 405, 412 (9th Cir. 1998) (citing <u>Northwest Forest Resource Council v. Glickman</u>, 82 F.3d 825, 839 (9th Cir. 1996)).  However, satisfaction of this requirement "does not automatically entitle an applicant to intervene."  <u>Venegas v. Skaggs</u>, 867 F.2d 527, 530 (9th Cir. 1989).  A court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b)(2).  In addressing this question, a court may consider (1) whether undue delay or prejudice to existing parties will result from the intervention, (2) whether the applicants' interests are adequately represented by existing parties and (3) the interests of judicial economy.  <u>Venegas</u>, 867 F.2d at 530-31.

Applicants argue that intervention is permissible under Rule 24(b)(2) based on (1) their proposed defense of a right under 42 U.S.C. § 7607 to participate meaningfully in the rule-making process; (2) their proposed factual defense that "federal law requires exceptions based on startup, shutdown and malfunction exemptions"; and (3) their contention that Plaintiffs' claimed basis of jurisdiction is invalid.  Mem. P. &

11

A. in Supp. of Mot. to Intervene at 8-9.

Plaintiffs argue that Applicants cannot meet the threshold requirements for permissive intervention, because there is no independent basis for jurisdiction over Applicants' defenses, because Applicants cannot be held liable for the claims asserted.  See League of Wilderness Defenders v. Forsgren, 184 F. Supp. 2d 1058, 1060-61 (D. Or. 2002) (finding no jurisdiction over proposed defendant-intervenor regarding liability aspects of NEPA action against Forest Service).  Applicants have not met their burden to establish that the Court has a basis for jurisdiction over their defenses, as least insofar as the liability phase of this action is concerned.  Unlike the EPA, Applicants face no liability under the Clean Air Act for failure to review standards of performance for sources of air pollutants.  For this reason, the Court declines to permit Applicants' intervention into the liability phase of this action.

Even had Applicants proven that they met the threshold requirements for permissive intervention, their claim that intervention would not cause undue delay or prejudice is unpersuasive.  Their first proposed defense, their right to participate in the rule-making process, will only become relevant in the event the Court orders injunctive relief.  Their proposed "factual defense" that federal law requires startup, shutdown and malfunction exemptions is relevant to the EPA's administrative process, but not to this lawsuit.  Finally, their purported jurisdictional argument relates to an interest that is

United States District Court

For the Northern District of California

12

United States District Court

For the Northern District of California

already adequately represented by the EPA.  Applicants' argument
that the EPA has already complied with its review requirements,
despite the EPA's own admissions, is based on what the EPA
described as "miscellaneous editorial changes and technical
corrections," 65 Fed. Reg. 61,744 (Oct. 17, 2000).  The EPA is
in a much better position than Applicants to raise
jurisdictional arguments regarding its own compliance with
§ 7411(b)(1)(B).  Nor would the interests of judicial economy
would be served by allowing Applicants to bring such a motion.

CONCLUSION

As described above, the Court concludes that Applicants may
not intervene as of right on the merits phase of this action.
The Court, however, grants Applicants permission to file an
amicus curiae brief with regard to the merits of Plaintiffs' CAA
claims.

Applicants may intervene in this case as to the question of
what injunctive relief, if any, should be ordered with respect
to any of Plaintiffs' claims.  Regarding injunctive relief,
Applicants will be allowed "to present evidence to the court
that 'unusual circumstances' weigh against the injunction
sought, and to present evidence to assist the court in
fashioning the appropriate scope of whatever injunctive relief
is granted."  Forest Conservation Council, 66 F.3d at 1496
(quoting Seattle Audubon Soc'y v. Evans, 771 F. Supp. 1081,
1087-95 (W.D. Wash.), aff'd, 952 F.2d 297 (9th Cir. 1991)).

For the foregoing reasons Applicants' motion is GRANTED in
part and DENIED in part (Docket No. 11).

1

2   Dated: 5/4/05                           /s/ CLAUDIA WILKEN
                                            CLAUDIA WILKEN
3                                           United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

14

Copies mailed to:


Robert Brager
Beveridge & Diamond
201 North Charles Street, Suite 2210
Baltimore, MD   21201-4150


Laura M. Duncan
Beveridge & Diamond
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251

United States District Court

For the Northern District of California

15